

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00359-CV

_____

IN THE INTEREST OF T.R., T.R., AND R.N.-R., CHILDREN

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-679118-20

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

In this termination case, appellant J.R. (Mother) appeals the trial court's order terminating her parental rights to her children T.R. (Trevor), T.R. (Tina), and R.D.N.-R. (Robert) (collectively the Children).[1] In six issues, Mother contends the evidence was legally and factually insufficient to support termination under Family Code Section 161.001(b)(1)(D), (E), (O), (P), and (R) and that the evidence was legally and factually insufficient to support the trial court's best-interest finding. Because we will hold that the evidence was legally and factually sufficient to support both the conduct grounds and the trial court's best-interest finding, we will affirm the trial court's termination order.

## I. Background

Drugs are at the heart of this termination. Mother, who was thirty-nine at the time of trial, testified that she began using marijuana at eighteen and began using methamphetamines at twenty-one. Her first child, Trevor, was born in October 2012 when Mother was thirty-one. Mother testified that she was not using drugs when Trevor was born. Mother's daughter, Tina, was born in December 2017. Mother testified that she began using heroin shortly after Tina's birth. She explained that she began using heroin daily and was a heroin user from 2018 until 2020.

---

[1]We use aliases to refer to the Children and the parties. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

The Department of Family and Protective Services became involved with Mother in April 2019, when it received allegations that she had purchased methamphetamines and "would stay up for several days at a time due to her being under the influence." Morgan Overn, an investigator with the Department, testified that she met with Mother after receiving the allegation, and Mother told her she had used illegal drugs "several years prior" but that she had not used illegal drugs in "about 10 years." Overn requested that Mother complete an oral swab drug test, but Mother refused. Mother told Overn that she would go to a drug-testing site the following day, but Mother did not have the testing done. After the Department became involved, Mother placed Trevor in the care of one of Mother's relatives and placed Tina in the care of Tina's paternal grandmother. In May 2019, Trevor and Tina were taken to Cook Children's Medical Center to be drug tested. Trevor did not have enough hair to be tested, but Tina was tested, and her results were positive for methamphetamines and heroin. Overn later referred Mother to Recovery Resource Council, and Mother engaged its services in June 2019. Mother admitted to Recovery Resource Council that she had used marijuana, methamphetamines, and heroin in the thirty days prior to June 2019, at a time when she was pregnant with Robert.

The Department filed its petition to terminate Mother's parental rights as to Trevor and Tina in August 2019. In the petition, the Department sought termination of Mother's parental rights based on the predicate termination grounds set forth in Subsections (D), (E), (F), (K), (M), (N), (O), (P), (Q), and (R) of Section 161.001(b)(1)

3

of the Family Code.[2] *See* Tex. Fam. Code Ann. § 161.001(b)(1) (D), (E), (F), (K), (M), (N), (O), (P), (Q), (R). Around that time, Jamesha Richard, a conservatorship specialist for the Department, was assigned to Mother's case. Richard met with Mother at a hearing on August 30, 2019, and Mother admitted to Richard that she had relapsed "right before the . . . hearing."

Richard developed a service plan for Mother. Among other things, Mother was asked to complete parenting classes, to attend individual counseling, to submit to a psychological evaluation, to submit to a drug abuse assessment, to comply with requests for random drug testing, and to refrain from engaging in criminal activity. Mother complied with some aspects of the service plan. She completed parenting classes, attended counseling sessions,[3] submitted to a psychological evaluation, and submitted to a drug abuse assessment.

As to the random drug testing and the requirement that she refrain from criminal activity, Mother's drug-test results came back negative in the early months of the case: she had negative test results in September 2019, October 2019, and November 2019. In December 2019, however, Mother tested positive for methamphetamines and heroin. That same month, Robert was born. Robert tested

---

[2]The petition was later amended in December 2019, following Robert's birth, and the Department sought termination of Mother's rights as to all the Children alleging the same termination grounds as in the original petition.

[3]While Mother attended several substance abuse counseling sessions, she was not discharged from counseling due to her continued use of illegal drugs.

positive for opiates at his birth, and after spending a month in the NICU, he was placed with a foster family. In February 2020, Mother tested positive for heroin. In May 2020, Mother tested positive for methamphetamines. In July 2020, Mother tested positive for heroin. In August 2020, Mother tested positive for methamphetamines. Richard testified that Mother was dishonest about her drug use. Richard stated that when Mother was confronted with the positive test results, Mother would typically deny that she had used drugs. At trial, however, Mother stated that she did not dispute the results of any of the drug tests. In explaining her relapses, Mother testified that she had been prescribed a legal dose of methadone during the summer of 2019 after becoming pregnant with Robert, and that she began using heroin in 2020 after she attempted to stop taking methadone on her own.

In October 2020, Mother was admitted to Nexus Recovery. She was still residing at Nexus at the time of trial in November 2020 but stated that she would be discharged at the end of the week. Mother testified at trial that she had been "clean for over a month." She stated that following her discharge from Nexus, she was going to attend a sober-living program at the Oxford House, an addiction recovery center. She stated that at the Oxford House she would receive counseling and recovery support services and that she would go to Alcoholics Anonymous and Narcotics Anonymous meetings. She also stated that she would have a recovery coach that could assist her with finding a job. Mother admitted, however, that it would take

"months" before she was fully recovered and "a couple months" to get a home, find a job, and be prepared to take care of the Children.

Following trial, the trial court issued a ruling terminating Mother's parental rights to the Children under Subsections (D), (E), (O), (P), and (R) and finding that such termination was in the Children's best interest. Mother appeals from that termination order.

## II. Conduct Grounds

In her first and second issues, Mother argues that the evidence was legally and factually insufficient to support termination under Family Code Section 161.001(b)(1)(D) and (E).

### A. STANDARD OF REVIEW

For a trial court to terminate a parent–child relationship, the party seeking termination must prove two elements by clear and convincing evidence: 1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and 2) that termination is in the child's best interest. *Id.* § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

To determine whether the evidence is legally sufficient in parental-termination cases, we look at all the evidence in the light most favorable to the challenged findings—here the endangerment findings—to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005); *see* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). We assume that the factfinder settled any evidentiary conflicts in favor of its finding if a reasonable factfinder could have done so. *J.P.B.*, 180 S.W.3d at 573. We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.* The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's findings and do not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). Here, we review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that the Department proved the endangerment grounds. *See* Tex. Fam. Code Ann.

§ 161.001(b)(1)(D), (E); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

## B. LAW ON ENDANGERMENT

Subsections (D) and (E) of Texas Family Code Section 161.001(b)(1) provide that the trial court may order the termination of a parent's rights if it finds by clear and convincing evidence that a parent has

(D)    knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; [or]

(E)    engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]

Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E).

"Endanger" means to expose to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under Subsection 161.001(b)(1)(D), it is necessary to examine the evidence related to the environment of the child to determine if the environment was the source of the endangerment to the child's physical or emotional well-being. *J.T.G.*, 121 S.W.3d at 125. Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child. *Id.* As an example, a parent's illegal drug use and drug-related

criminal activity supports the conclusion that a child's surroundings endanger the child's physical or emotional well-being. *Id.*

Under Subsection 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See id.*; *see also* Tex. Fam. Code Ann. § 161.001(b)(1)(E). Termination under Subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *J.T.G.*, 121 S.W.3d at 125. It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533; *J.T.G.*, 121 S.W.3d at 125. The specific danger to a child's well-being may be inferred from parental misconduct standing alone. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *Id.* Additionally, "[a] mother's use of drugs during pregnancy may amount to conduct that endangers the physical and emotional well-being of the child," and "[d]rug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct as well." *J.T.G.*, 121 S.W.3d at 125–26.

## C. ENDANGERMENT ANALYSIS

Because the evidence pertaining to Subsections (D) and (E) is interrelated, we conduct a consolidated review. *In re S.H.*, No. 02-17-00188-CV, 2017 WL 4542859, at

9

*10 (Tex. App.—Fort Worth Oct. 12, 2017, no pet.) (mem. op.); *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.).

Here, the record contains evidence that Mother had used illegal drugs for much of her adult life and that she displayed little ability to stop her addiction. Mother began using marijuana at eighteen and methamphetamines at twenty-one. Although she testified that she was not using drugs when Trevor was born, Mother admitted that she began using heroin shortly after Tina's birth. Mother testified that she used heroin daily and that she used the drug from 2018 until 2020. The record further reflects that the Department became involved in this case due to allegations of Mother's drug use—it was alleged that Mother "would stay up for several days at a time due to her being under the influence." In May 2019, Tina tested positive for methamphetamines and heroin. Records from Recovery Resource Council show that Mother admitted to using marijuana, methamphetamines, and heroin while she was pregnant with Robert.

Mother's illegal drug use continued even after the Department filed its petition to terminate her parental rights. Mother tested positive for methamphetamines and heroin in December 2019. That same month, Robert tested positive for opiates at his birth. Mother tested positive for heroin in February 2020, tested positive for methamphetamines in May 2020, tested positive for heroin in July 2020, and tested positive for methamphetamines in August 2020. Richard testified that Mother was

10

dishonest about her drug use. At trial, Mother did not dispute the results of her drug tests.

Viewing all the evidence in the light most favorable to the trial court's judgment and recognizing that the factfinder is the sole arbiter of the witnesses' credibility and demeanor, we hold that there is some evidence of an endangering environment on which a reasonable factfinder could have formed a firm belief or conviction that Mother had knowingly placed or had knowingly allowed the Children to remain in conditions or surroundings that had endangered their emotional or physical well-being and that there is some evidence of endangering conduct on which a reasonable factfinder could have formed a firm belief or conviction that Mother had engaged in conduct that had endangered the Children's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *J.T.G.*, 121 S.W.3d at 125–26.

Giving due deference to the factfinder's endangering-environment and endangering-conduct findings, without supplanting the factfinder's judgment with our own, and after reviewing the entire record, we hold that a factfinder could reasonably form a firm conviction or belief that Mother had knowingly placed or had knowingly allowed the Children to remain in conditions or surroundings that had endangered their emotional or physical well-being and that Mother had engaged in conduct that had endangered the Children's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *J.T.G.*, 121 S.W.3d at 125–26.

We overrule Mother's first and second issues. Because we hold that the evidence is legally and factually sufficient to support the endangerment findings, and because only one finding is necessary to sustain a parental-rights termination, we need not address Mother's challenges to the trial court's other findings of grounds for termination. *See* Tex. Fam. Code Ann. § 161.001(b); *E.N.C.*, 384 S.W.3d at 803; *J.L.*, 163 S.W.3d at 84; *see also* Tex. R. App. P. 47.1. We therefore overrule Mother's third, fourth, and fifth issues.

### III. Best Interest

In her sixth issue, Mother argues that the evidence was legally and factually insufficient to support the trial court's best-interest finding.

#### A. STANDARD OF REVIEW AND BEST-INTEREST FACTORS

We review Mother's challenge to the sufficiency of the trial court's best-interest finding under the review standards stated regarding the conduct grounds. In determining whether to support a best-interest finding, we review the entire record. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Evidence probative of a child's best interest may be the same evidence that is probative of a Subsection (b)(1) ground. *E.C.R.*, 402 S.W.3d at 249; *C.H.*, 89 S.W.3d at 28; *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We also consider the evidence in

12

light of nonexclusive factors that the factfinder may apply in determining the child's best interest:

(A)   the child's desires;

(B)   the child's emotional and physical needs, now and in the future;

(C)   the emotional and physical danger to the child now and in the future;

(D)   the parental abilities of the individuals seeking custody;

(E)   the programs available to assist these individuals to promote the child's best interest;

(F)   the plans for the child by these individuals;

(G)   the stability of the home or proposed placement;

(H)   the parent's acts or omissions indicating that the existing parent-child relationship is not a proper one; and

(I)   any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors" (footnote omitted)); *E.N.C.*, 384 S.W.3d at 807. These factors are not exhaustive, and some listed factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

13

## B.  BEST-INTEREST ANALYSIS

With regard to the Children's emotional and physical needs now and in the future and the emotional and physical danger to them now and in the future, the record reflects that Mother abused illegal drugs to the detriment of the Children. Mother became a daily heroin user shortly after Tina's birth, and shortly after the Department became involved, Tina tested positive for methamphetamines and heroin. The record further reflects that Mother used illegal drugs while pregnant with Robert—records from Recovery Resource Council indicate that Mother used marijuana, methamphetamines, and heroin in the thirty days prior to June 2019, and Richard testified that Mother told her that she had relapsed "right before" an August 30, 2019 hearing. Robert ultimately tested positive for opiates at his December 2019 birth. Mother continued using illegal drugs following Robert's birth, testing positive for methamphetamines and/or heroin in February, May, July, and August 2020. While Mother stated that she had been "clean for over a month" at trial, Mother had previously had periods where she had not taken illegal drugs before relapsing. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights to the Children.

With regard to the plan for the Children by the individuals seeking custody and the stability of the home or proposed placement, the record reflects that Richard recommended that the Children be adopted and that it was in their best interest to be adopted. The record also reflects that Robert was placed with a foster family shortly

after his birth and that he had bonded with the family, was thriving, and that the family wished to adopt him. The record further reflects that that same foster family was interested in adopting Tina.[4] The record also reflects that Trevor's current caregiver—Mother's relative that had taken care of him since shortly after the Department's involvement in the case—desired to adopt him. The Department was also considering whether Trevor could be placed with a former boyfriend of Mother's who had been a father figure in Trevor's life. Mother testified that the Children appeared to be well taken care of by their respective placements. As to Mother's plans, the record reflects that Mother had not established employment at the time of trial and had not established any kind of home or housing, although Mother believed that a recovery coach at the Oxford House could assist her with finding a job. Mother admitted, however, that it would take "months" before she was fully recovered from her drug addiction and that it would take "a couple months" to get a home, find a job, and be prepared to take care of the Children. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights to the Children.

With regard to Mother's acts or omissions indicating that the existing parent–child relationship is not a proper one and any excuse for Mother's acts or omissions, the record reflects, as detailed above, that Mother abused illegal drugs to the

---

[4]Tina's paternal grandmother, who had been taking care of Tina since the Department's involvement in the case, was evidently in hospice care at the time of trial.

15

detriment of the Children. Tina tested positive for methamphetamines and heroin, Mother used marijuana, methamphetamines, and heroin while pregnant with Robert, and Robert ultimately tested positive for opiates at his birth. Mother continued using illegal drugs following Robert's birth, testing positive for methamphetamines and/or heroin in February, May, July, and August 2020. At trial, Mother stated that she began using drugs on a regular basis because she was "molested as a child [and] grew up with alcoholic parents," although Mother admitted that she was responsible for Robert being positive at birth for opiates and that she was responsible for Tina testing positive for methamphetamines and heroin. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights to the Children.

## C. BEST-INTEREST CONCLUSION

Viewing the evidence in the light most favorable to the trial court's best-interest finding, we hold that a reasonable factfinder could have reasonably formed a firm conviction or belief that termination of the parent-child relationship between Mother and the Children was in the Children's best interest, and we therefore hold that the evidence is legally sufficient to support the trial court's best-interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *J.P.B.*, 180 S.W.3d at 573. Based on our exacting review of the entire record and giving due deference to the factfinder's findings, we likewise conclude that the evidence is factually sufficient to support the trial court's best-interest finding. *See C.H.*, 89 S.W.3d at 18–19. Accordingly, we overrule Mother's sixth issue.

16

## IV. Conclusion

Having overruled Mother's six issues, we affirm the trial court's termination order.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: April 15, 2021